Minute Order Form (06/97)

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | David H. Coar | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3619 | **DATE** | June 5, 2002 |
| **CASE TITLE** | Sylvester Marshall v. Webb Chevrolet, Inc. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

Plaintiff's Motion for Class Certification

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] For the reasons stated in the attached memorandum and opinion order, this Court GRANTS Plaintiff's motion to withdraw paragraph 17 of the Amended Complaint [52-1] and DENIES Defendant's motion for summary judgment [39-1] in its entirety.

(11) ■ [For further detail see attached memorandum and opinion order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | number of notices | |
| | No notices required. | | | |
| | Notices mailed by judge's staff. | | JUN 07 2002 date docketed | 57 |
| | Notified counsel by telephone. | | | |
| X | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| mds(lc) | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

SYLVESTER MARSHALL and all others similarly situated,

Plaintiff,

v.

WEBB CHEVROLET, INC.

Defendant.

No. 01 C 3619

HONORABLE DAVID H. COAR

**DOCKETED JUN 7 2002**

## MEMORANDUM OPINION AND ORDER

Sylvester Marshall ("Marshall") brings a class action suit against Webb Chevrolet, Inc. ("Webb") pursuant to the Truth in Lending Act ("TILA"), 15 U.S.C. § 1638 (Counts I and II), the Illinois Consumer Fraud Act, 815 ILCS 505/2 (Count III), the Illinois Motor Vehicle Retail Installment Sales Act, 815 ILCS 375/1 (Count IV). Marshall also alleges individual claims against Webb under TILA (Count V), the Illinois Consumer Fraud Act (Count VI), the Illinois Motor Vehicle Retail Installment Sales Act (Count VII), common law fraud (Count VIII), and "rejection or revocation" (Count IX). Webb moves for summary judgment or, in the alternative, partial summary judgment on the issue of damages. For the reasons stated below, this Court DENIES Webb's motion for summary judgment in its entirety.

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Rivera v. Grossinger Autoplex, Inc., 274 F.3d 1118, 1121 (7th Cir. 2001). A

genuine issue of material fact exists for trial when, in viewing the record and all reasonable inferences drawn from it in a light most favorable to the non-movant, a reasonable jury could return a verdict for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); Eiland v. Trinity Hosp., 150 F.3d 747, 750 (7th Cir. 1998).

The movant bears the burden of establishing that no genuine issue of material fact exists. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986); Hedberg v. Indiana Bell Tel. Co., 47 F.3d 928, 931 (7th Cir. 1995). If the movant meets this burden, the non-movant must set forth specific facts that demonstrate the existence of a genuine issue for trial. Rule 56(e); Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. Rule 56(c) mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322, 106 S. Ct. at 2552-53. The non-movant "'must do more than simply show that there is some metaphysical doubt as to the material fact.'" Id. (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)). A scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." Anderson, 477 U.S. at 250, 106 S. Ct. at 2511. Weighing evidence, determining credibility, and drawing reasonable inferences are jury functions, not those of a judge deciding a motion for summary judgment. Anderson, 477 U.S. at 255, 106 S. Ct. at 2515.

## II. Background

The following facts are taken from the parties' Local Rule 56.1(a)(3) and (b)(3) Statement of Material Facts. Except where noted, the following facts are undisputed. This case arises from events surrounding the alleged sale of a 2001 Chevrolet Impala. Marshall, a resident of Chicago,

Illinois, owned a 1996 Cadillac. In the weeks and months prior to January 13, 2001, Marshall was "shopping" for new cars; he had spoken to the Chicago Patrolmen's Credit Union about financing a new vehicle purchase with it but he did not receive any specific rates. Also prior to January 13, Marshall had not yet decided whether he wanted to trade in his 1996 Cadillac or keep it along with any new vehicle he purchased, and he had not investigated the trade value of the Cadillac.

On Saturday, January 13, 2001, Marshall visited other car dealerships before arriving at Webb at around 6:00 p.m. Marshall spoke with Dredd Arrington ("Arrington"), a Webb salesman, whom he found to be "friendly" and "a good salesman." Arrington showed Marshall the 2001 Chevrolet Impala at issue and they went for a test drive. Marshall told Arrington that he was not willing to purchase a vehicle on that night, January 13, 2001, and Arrington told him that he could take the Impala home over the three-day weekend to consider how that vehicle compared to his Cadillac. Arrington told Marshall that he could decide on Tuesday, January 16, 2001[1] whether he wished to go through with the purchase of the Impala. In addition to Arrington, Marshall also spoke with John Burke, another Webb employee. Burke reiterated that Marshall could take the Impala home over the weekend and return on Tuesday to decide then whether he wished to purchase the Impala.

On January 13, 2001, at Burke's direction, Marshall signed the Webb purchase contract on the front side only. Burke explained to Marshall that the contract was designed exactly for this kind of situation; namely, when the customer did not want to decide to purchase on the spot, but he wanted to "lock in" the purchase terms. Burke told Marshall that the front side of the

---

[1] Marshall's credit union was closed on Monday, January 15, 2001 in observance of Martin Luther King Day.

contract was a worksheet and that by signing the front side Marshall would lock in the purchase price and related terms. Burke stated that the back side of the contract contained the binding contract terms, and that Marshall could wait until after the weekend to sign that part of the contract if he chose to proceed with the purchase. Marshall reviewed and signed the Motor Vehicle Contract of Sale, two odometer disclosure statements, the Illinois Department of Revenue ST-556 Sales Tax Transaction Return, and the New Vehicle Agreement that provided the warranty. Marshall discussed the warranty with Burke that day and he understood the warranty would cost $1079.00. Marshall contends that he signed the front side of the contract with the understanding that he was signing the worksheet portion only and not the portion that was "binding."

Marshall did not pay Webb any money that evening, nor did he pay Webb any amount of money later. He did, however, leave his Cadillac with Webb because he understood that he could retrieve it on Tuesday if he did not want to purchase the Impala. No credit disclosures were made to Marshall on January 13, 2001, and there were no discussions of any kind about financing with GMAC. Marshall never signed the Retail Installment Contract ("RIC") that Webb later assigned to General Motors Acceptance Corporation ("GMAC"). Marshall does not know if he ever signed a blank RIC. Marshall also does not know if he was given any truth in lending disclosures of any kind in any form on January 13, 2001.[2]

On January 16, 2001, Marshall returned to Webb to retrieve his Cadillac and to inform Arrington and Burke that he had decided against purchasing the Impala. Arrington and Burke refused to honor Marshall's election not to purchase the vehicle and they refused to return his

---

[2] Marshall disputes this fact, but the portions of the record he cites for support are inapposite; they only indicate that he did not see a copy of the GMAC RIC until the first week of February.

-4-

Cadillac. In late January and early February, Marshall's attorney made numerous demands on Webb and GMAC to rescind the transaction and return Marshall's Cadillac. During the dispute, Marshall continued making installment payments to his credit union on the Cadillac but he did not make payments on the Impala. After Webb and GMAC refused to honor Marshall's demands to rescind the transaction and return the Cadillac, Marshall refinanced the Impala transaction on April 17, 2001 with his credit union under protest and he stated that he was preserving his rights under the law. Marshall refinanced the transaction to protect his credit record, to prevent the Impala from being repossessed and risk losing an automobile altogether, and to seek a more favorable finance rate than the rate imposed by Webb and GMAC.

Marshall stated that the Impala is a "nice car" and that he "didn't have any complaints about the quality of the car." It has not broken down and the only service it has required has been scheduled maintenance, which Marshall found to be acceptable. Marshall has driven the Impala over 12,000 miles and he contends that the Impala has served its purpose. Marshall never made any monthly payment to GMAC on the Impala. The only payment he made to GMAC was when he paid off the entire note in April 2001 after refinancing with the Chicago Patrolmen's Credit Union. Upon payment, GMAC gave Marshall a finance charge rebate of $17,372.66.

In the past year, Marshall has had credit applications rejected once or twice and accepted once. When his credit was rejected, Marshall was told it was "because of some unpaid collections," most likely "some small [unpaid] medical bills" totaling around $60. In the past year, no credit agency has given Marshall any other reason for denying him credit. Marshall has no evidence that "GMAC has put any sort of a negative alert on his credit record." The current refinanced rate for Marshall's loan from the Chicago Patrolmen's Federal Credit Union is 8.5%. Marshall demands the following damages from Webb: (1) a late payment charge of $37.69; (2)

the difference between the 23.95% finance rate and the rate extended to Marshall by the Chicago Patrolmen's Federal Credit Union; (3) the unpaid finance charge of $19,257.89; (4) the loss of Marshall's 1996 Cadillac trade-in vehicle, valued by Webb at $2,500.25 and consequential losses; (5) $3,000 cash; (6) prejudgment interest on the loss of the 1996 Cadillac and the $3,000 cash; (7) loss of purchasing options; (8) damages resulting from harm to Marshall's credit score; (9) aggravation, inconvenience, and punitive damages; (10) statutory damages under TILA for Marshall and possibly for class members; (11) attorney's fees and court costs; and (12) class damages.

### III. Discussion

A. TILA Claims

Marshall alleges that Webb violated TILA, 15 U.S.C. § 1638(b)(1), and Regulation Z, 12 C.F.R. § 226.17(a)(1) and (b) by not providing him, and members of the class, with Truth in Lending disclosures before consummation of the transaction in a form they could keep. Specifically, Marshall alleges that Webb rushed Marshall through the signing process and did not provide him the opportunity to read the disclosures before the RIC was signed. As a result, Marshall alleges that he, along with members of the class, were deprived of their right to shop for better financial terms because they did not receive the TILA disclosures prior to consummation of the transaction in a form they can keep. Further, Marshall alleges that the service contract and documentary fee in the RIC was included under the heading, "Other Charges Including Amounts Paid to Others on Your Behalf," which violates the disclosure requirements of 15 U.S.C. § 1638(a)(2)(B)(iii) and Regulation Z, 12 C.F.R. § 226.18(c)(1)(ii) and (iii), because it did not itemize the amount or disclose it as an amount paid to other persons. Webb moves for summary judgment on the TILA claims, arguing that TILA does not require Webb to provide written

-6-

disclosures in a form the customer may keep before consummation of the transaction. Webb further argues that the manner in which the documentary fee and service contract were disclosed on the RIC complied with TILA. This Court addresses each argument in turn

*1. Written Disclosures in Retainable Form Prior to Consummation*

Under TILA and Regulation Z, creditors are required to make certain disclosures when extending credit to customers. These disclosures must be "clearly and conspicuously in writing, in a form that the consumer may keep." 12 C.F.R. § 226.17(a)(1). Additionally, the disclosures must occur "before consummation of the transaction." 12 C.F.R. § 226.17(b). Webb argues that summary judgment be granted in its favor because these two regulations should not be read together as Marshall posits. In his Amended Complaint, however, Marshall alleges that he never received the TILA disclosures in writing in a form he could keep.[3] Indeed, Marshall alleges that he never signed the RIC that contained the TILA disclosures. As Webb did not address this contention, a genuine issue of material fact exists as to whether Marshall's signature was forged and whether TILA was violated; summary judgment on this issue, therefore, is denied.

Although Marshall's TILA claim does not turn on whether 12 C.F.R. § 226.17(a)(1) and (b) are read together, this Court addresses the issue for members of the class whose TILA claims may turn on this issue. Webb, relying chiefly on <u>Polk v. Crown Auto, Inc.</u>, 110 F. Supp. 2d 455 (W.D. Va. 1999), a case that was subsequently reversed by the Fourth Circuit, argues that Regulation Z's plain meaning requires disclosures prior to consummation of the transaction and,

---

[3] Marshall has moved to withdraw Paragraph 17 of the Amended Complaint, which alleges that "on the date of the transaction, plaintiff read the TILA disclosure statement and understood the charges being disclosed." Marshall argues that this paragraph is part of a form TILA complaint that his attorneys had previously used and that they inadvertently included it in Marshall's complaint. Because Webb has not objected to the withdrawal of this paragraph, and as Marshall points out, because this paragraph contradicts the main and oft repeated allegations of the Amended Complaint, this Court grants Marshall's motion to withdraw this paragraph and does not consider its allegations.

at some point, that those disclosures be given to the consumer in a form that he or she can keep. Marshall, on the other hand, offers several cases from this jurisdiction in support of his proposition that these two requirements are read together and that the car dealer must give customers a copy of the RIC that they can keep, which contains the TILA disclosures, *before* they sign it. See, e.g., Holley v. Gurnee Volkswagen and Oldsmobile, Inc., No. 00 C 5316, 2001 WL 243191, at *3 (N.D. Ill. Jan. 4, 2001); Brugger v. Elmhurst Kia, No. 01 C 1860, 2001 WL 845472, at *1 (N.D. Ill. July 24, 2001); Harris v. River View Ford, Inc., No. 00 C 8129, 2001 WL 1191188, at *2 (N.D. Ill. Oct. 4, 2001); Crowe v. Joliet Dodge, No. 00 C 8131, 2001 WL 811655, at *3 (N.D. Ill. July 18, 2001); Collins v. Ray Skilling Olds-GMC Truck, Inc., No. IP 00-1281, 2001 WL 1711466, at *8 (S.D. Ind. 2001).

This Court is persuaded by the reasoning of the other judges in this court. This Court also notes, however, that a dealer complies with these requirements so long as he gives the customer the RIC as little as one second before consummation, providing that there is no evidence that the customer could not have kept or taken away a copy of the contract with the TILA disclosures before he or she signed it. See Spearman v. Tom Wood Pontiac-GMC, Inc., No. IP 00-1340, 2001 WL 1712506, at *5 (S.D. Ind. Dec. 3, 2001); Diaz v. Joe Rizza Ford, Inc., No. 00 C 7082, 2001 WL 1360315 (N.D. Ill. Nov. 2, 2001); see also Polk v. Crown Auto, Inc., 221 F.3d 691 (4th Cir. 2000) (holding that the dealer must provide a detailed disclosure of the credit terms before consummation of the transaction); Nigh v. Koons Buick Pontiac GMC, Inc., 143 F. Supp. 2d 535, 548 (E.D. Va. 2001) (holding that giving the consumer the disclosures on the contract before the consumer signs it complies with the timing requirement of Regulation Z).

In certifying the class in this case, this Court defined the class as "[a]ll customers of Webb who, within one year of the filing of the Class Action Complaint, were entitled to TILA

disclosures but were not given their disclosures in writing, in a form they could keep, prior to consummation of their transactions, in violation of TILA." Marshall v. Webb Chevrolet, Inc., No. 01 C 3619, 2002 WL 360654, at * 3 (N.D. Ill. Mar. 6, 2002). Marshall has alleged that Webb has a standard practice of failing to give customers copies of the contracts with the TILA disclosures until after the contracts were signed. This Court reiterates that only customers who, like Marshall, did not receive their contracts prior to consummation of their transactions are included in this class. Thus, summary judgment as to the class members is also denied.

*2. Webb's Failure to Disclose the "Service Contract" and "Documentary Fee"*

Regulation Z, 12 C.F.R. §§ 226.18(b)-(d) requires disclosure of the charges for the service contract and documentary fee either as part of the amount financed or as finance charges paid to other persons on the consumer's behalf. Webb argues that, on its face, the RIC complies with these requirements. For example, the documentary fee is included under the "other charges" section of the RIC. This section is clearly described on the form as "other charges including amounts paid to others on your behalf: *(Seller, holder or their affiliates may be keeping part of these amounts)*" (emphasis added). Similarly, Webb included the service contract under the "other charges" section and it properly identified and itemized the amount. Webb argues inclusion of the service contract here was in compliance with TILA because under 12 C.F.R. 226.4(a)(1)(i)(D) charges for a service policy are not finance charges and can be included as an additional sum.

This Court agrees that on its face, Webb's form complies with the TILA requirements as to the service contract and documentary fee. The problem, however, is that because Marshall did not receive the RIC prior to the consummation of the transaction, he did not receive any of the TILA disclosures, including those disclosures concerning the service contract and documentary

fee. Thus, while this Court notes that these allegations do not constitute an independent TILA violation, summary judgment as to the service contract and documentary fee disclosure is also denied for the reasons previously stated.

B. Marshall's Damages Claims

In the alternative, Webb argues that many of Marshall's damages claims are either improper or unsupported by the evidence and it therefore is entitled to summary judgment on certain elements of these claims. While damages may not be speculative or conjectural, neither are they required to be calculated with scientific precision or mathematical certainty. Bob Willow Motors, Inc. v. General Motors Inc., 872 F.2d 788, 798 (7th Cir. 1989); F.L. Walz, Inc. v. Hobart Corp., 586 N.E.2d 1314, 1319 (Ill. App. 1992). Further, damages are speculative when uncertainty exists as to the very fact of damages, as opposed to the amount of damages. See Marro v. Adamski & Conti, No. 97 C 8805, 1998 WL 704095, at *2 (N.D. Ill. Sept. 23, 1998); see also Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 688 (1946) (discussing application of the general rule precluding uncertain and speculative damages).

Here, Marshall may recover statutory and actual damages under TILA if he can prove that Webb forged his signature on the RIC, or if it concealed the disclosures. And, because Marshall alleged he could have obtained better financing terms, he may recover actual damages under 15 U.S.C. § 1640 (a)(1). See, e.g., Brugger, 2001 WL 845472, at *1. Thus, with the exception of the claim of lost time from work, which Marshall concedes is no longer a proper damages claim, this Court finds that summary judgment on the issue of damages is premature. While Marshall may be unable to prove some of these damages at trial, because these purported damages are not based on uncertain or speculative facts, summary judgment is denied.[4]

---

[4] This Court notes that Webb may submit a proposed damage instruction that would direct the jury to the appropriate standard.

-10-

## IV. Conclusion

For the foregoing reasons, Webb's motion for summary judgment or, in the alternative, partial summary judgment, is DENIED in its entirety.

Enter:

_____
David H. Coar
**United States District Judge**

**Dated: June 5, 2002**